# GIBSON DUNN

Gibson, Dunn & Crutcher LLP

200 Park Avenue
New York, NY 10166-0193
Tel 212.351.4000
www.gibsondunn.com

Eric J. Stock
Direct: +1 212.351.2301
Fax: +1 212.716.0801
EStock@gibsondunn.com

Client: 80036-00001

September 9, 2016

VIA ECF

Hon. Richard J. Sullivan
United States District Court, Southern District of New York
40 Foley Square
New York, NY 10007

Re:   Biocad JSC v. F. Hoffmann-La-Roche Ltd., et al., Case No. 16 Civ. 4226 (RJS)

Dear Judge Sullivan:

We represent defendant R-Pharm JSC ("R-Pharm") in the above-captioned action. We respectfully request a Pre-Motion Conference for R-Pharm's contemplated motion to dismiss the Complaint. Without waiving any of R-Pharm's legal rights or objections, including with respect to service and jurisdiction, we are prepared to appear and discuss these issues at the conference already scheduled by the Court for September 23, 2016.

R-Pharm and the Instant Dispute

R-Pharm (which Plaintiff mistakenly refers to as "R-Farm" in the Complaint) is a pharmaceutical company organized under the laws of the Russian Federation, and based in Moscow, Russia. *R-Pharm does no business at all in the United States*.[1] Plaintiff Biocad JSC, also a Russian company, alleges that R-Pharm's competitive activities *in Russia* weakened Plaintiff financially and that this financial weakness, in turn, impeded Plaintiff from entering the U.S. market. (*See, e.g.*, Compl. ¶¶ 10-12, 112-27, 181). That is the purported basis of Plaintiff's U.S. antitrust claims against R-Pharm.

R-Pharm's Proposed Motion to Dismiss

We respectfully request permission to move to dismiss on at least the following grounds: (1) improper service of process; (2) lack of personal jurisdiction; (3) failure to state a claim, including pursuant to the Foreign Trade Antitrust Improvements Act ("FTAIA"); and (4) comity/forum non conveniens.

---

[1]   R-Pharm does own two very small subsidiaries in the U.S. (neither of which operates out of New York). Plaintiff does not (and could not) allege that either has any connection to the facts alleged in the Complaint.

Beijing • Brussels • Century City • Dallas • Denver • Dubai • Frankfurt • Hong Kong • London • Los Angeles • Munich
New York • Orange County • Palo Alto • Paris • San Francisco • São Paulo • Singapore • Washington, D.C.

GIBSON DUNN

Hon. Richard J. Sullivan
September 9, 2016
Page 2

*Service of Process.*  Plaintiff has not served R-Pharm properly under Fed. R. Civ. P. 4.  Plaintiff sought to serve R-Pharm through personal delivery overseas and registered mail (*see* Dkt # 11), but these means are not permitted by Rule 4 for service on a foreign corporation in Russia.  Rule 4(h)(2) expressly declines to authorize personal service on foreign companies overseas.[2]  *See Bidonthecity.com LLC v. Halverston Holdings Ltd.*, No. 12 Civ. 9258, 2014 WL 1331046 at *7 (S.D.N.Y. Mar. 31, 2014) (Carter, J.).

Service by registered mail is also not permitted because Russia is a party to the Hague Convention.  Russian companies must ordinarily be served pursuant to that treaty's procedures.  *See id.*; Fed. R. Civ. P. 4(f).  The Russian government has apparently suspended cooperation with the U.S. under that treaty, and some courts have accordingly granted motions by plaintiffs to serve Russian defendants by "alternative means not prohibited by international agreement" under Rule 4(f)(3).  2014 WL 1331046 at *10.  But Plaintiff has not sought such an order.  If Plaintiff files such a motion, it must propose a means of service that complies with Rule 4 and U.S. treaty obligations.  R-Pharm is likely to oppose such motion.

*Personal Jurisdiction.*  As noted, R-Pharm is a Russian entity that does no business in the United States.  As such, it lacks the requisite "minimum contacts"—and none are alleged—with New York or the United States to support personal jurisdiction.  *See, e.g., Lewis v. Madej*, No. 15-cv-2676, 2015 WL 6442255 at *6 (S.D.N.Y. Oct. 23, 2015).  R-Pharm is not alleged to have made any sales in the United States, engaged in any marketing in the United States, or otherwise purposely availed itself of U.S. laws or legal protection.[3]

The Complaint challenges R-Pharm's conduct in connection with its sale of cancer drugs in Russia—drugs that R-Pharm is not alleged to be able to sell in the U.S.  (Compl. ¶¶ 12, 26).  A company in such a position would not reasonably expect its business activities, such as the pricing and packaging of its drugs in Russia, to be governed by U.S. antitrust laws, and would not "reasonably anticipate being haled into" into a faraway U.S. court based on such conduct.  *Lewis*, 2015 WL 6442255 at *6 (citation and quotations omitted).

*FTAIA*.  Plaintiff attempts to "dress up" this action as involving U.S. commerce, but the factual allegations underlying its purported claims against R-Pharm relate exclusively to

---

[2] Rule 4(h) provides that service on a foreign company overseas may be "in any manner prescribed by Rule 4(f) for serving an individual, *except personal delivery* . . . ."  Fed. R. Civ. P. 4(h)(2) (emphasis added).

[3] As noted, R-Pharm does have two small U.S. subsidiaries, but under well-established jurisprudence a subsidiary's activities in the United States cannot be attributed to the parent for the purposes of exercising personal jurisdiction over the parent.  *See Daimler AG v. Bauman*, 134 S. Ct. 746, 758-60 (2013).

GIBSON DUNN

Hon. Richard J. Sullivan
September 9, 2016
Page 3

commerce in Russia.  (Compl. ¶¶ 12, 26, 112-43).  Plaintiff's allegation that R-Pharm's conduct in Russia harmed Plaintiff in Russia—but resulted in financial weakness that in turn impeded Plaintiff's ability to enter the U.S. market—is a paradigmatic example of foreign-market conduct with at most allegedly *indirect* ripple effects in the U.S.  Congress expressly foreclosed U.S. jurisdiction over claims based on such indirect effects.  *See* 15 U.S.C. § 6a (Sherman Act does not apply to conduct involving foreign commerce unless "such conduct has a direct, substantial, and reasonably foreseeable effect" on U.S. commerce); *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 409-13 (2d Cir. 2014) (requiring "reasonably proximate causal nexus" between the alleged conduct and U.S. effect under FTAIA).

For the reasons explained in the letters separately submitted by co-defendants Genentech and FHLR, the claims against all Defendants in this action are precluded by the FTAIA because they rely on the indirect and speculative effects (relating to entry that has not occurred) of alleged anticompetitive conduct concerning commerce and competition within Russia.  But the case for dismissal is even stronger for R-Pharm.  R-Pharm is not alleged to have participated in or profited from any sales made by any party in the U.S.  There are no facts pled even remotely suggesting that R-Pharm has any stake in competition in the U.S. for the drugs subject to the Complaint; its conduct and profits for those drugs relate solely to the Russian market.

Plaintiff's claims are also deficient for numerous other reasons.  To avoid repetition, R-Pharm incorporates by reference the defects noted by its co-defendants in their letters being filed concurrently with the Court, including as to standing and the elements of claims for predatory pricing, price discrimination, tying, and tortious interference.

*Comity/Forum Non Conveniens*.  Plaintiff's claims against R-Pharm also improperly seek to litigate what is essentially a Russian dispute in a U.S. court.  To the extent that R-Pharm's competitive activities in Russia were lawful under Russian law, Plaintiff's attempt to challenge them under U.S. antitrust law would impinge on Russian sovereignty.  It is one thing for U.S. courts to provide a cause of action where competitors acting outside of the U.S. collude in an effort to fix prices or allocate the U.S. market.  It is quite another for U.S. antitrust standards to dictate how Russian companies must compete within Russia for sales in that country.  *See, e.g., In re Foreign Exchange Benchmark Rates Antitrust Litigation*, 74 F. Supp. 3d 581, 599 (S.D.N.Y. 2015).  Plaintiff challenges, among other things, *the prices R-Pharm charges for its drugs in Russia* and *how R-Pharm packages its drugs for the Russian market*.  (*See, e.g.,* Compl. ¶¶ 124, 140).  Further, it would be inconvenient from the standpoint of evidence and witnesses for two Russian companies to litigate such a dispute in a U.S. court.  *See, e.g.*, *Wallert v. Atlan*, 141 F. Supp. 3d 258, 281 (S.D.N.Y. 2015).

**GIBSON DUNN**

Hon. Richard J. Sullivan
September 9, 2016
Page 4


Respectfully submitted,


/s/ Eric Stock
    Eric Stock