**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

BIOCAD JSC,

                    *Plaintiff,*

         v.

ROCHE HOLDING AG, F. HOFFMAN LA-
ROCHE LTD., GENENTECH, INC. and R-
FARM JSC,

                    *Defendants.*

**ORAL ARGUMENT REQUESTED**

16 Civ. 4226 (RJS) (JLC)

---

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO SANCTION BIOCAD AND ITS COUNSEL**

Dated:      February 14, 2017

Paul Spagnoletti
Andrew S. Gehring
DAVIS POLK & WARDWELL LLP
450 Lexington Avenue
New York, New York  10017
(212) 450-4000

*Counsel for Defendants Roche Holding AG*
    *and F. Hoffmann-La Roche Ltd*


Eric J. Stock
Alejandro A. Herrera
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, New York  10166-0193
(212) 351-4000

*Counsel for Defendant R-Pharm JSC*

Daniel M. Wall (admitted *pro hac vice*)
LATHAM & WATKINS LLP
505 Montgomery Street, Ste. 2000
San Francisco, California  94111
(415) 395-8240

Lawrence E. Buterman
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York  10022
(212) 906-1200

Amanda P. Reeves (admitted *pro hac vice*)
LATHAM & WATKINS LLP
555 Eleventh Street, NW, Suite 1000
Washington, DC 20004
(202) 637-2183

*Counsel for Defendant Genentech, Inc.*

# TABLE OF CONTENTS

PAGE

PRELIMINARY STATEMENT ............................................................................................1

RELEVANT BACKGROUND ...........................................................................................4

LEGAL STANDARDS .......................................................................................................6

ARGUMENT .......................................................................................................................8

    I.      The Claims Advanced in the Complaint and the Amended Complaint
            Are in Violation of Rule 11 ................................................................................8

            A.      Plaintiff's Counsel Should Be Sanctioned
                     for Bringing Claims Absent Injury ............................................................8

            B.      Plaintiff's Counsel Should Be Sanctioned
                     for Bringing Claims Contrary to Statute...................................................10

            C.      BIOCAD Should Be Sanctioned
                     for Prosecuting This Action with an Improper Motive.............................13

            D.      Plaintiffs' Counsel Should Be Sanctioned
                     for Knowingly Advancing Specious
                     Arguments for Personal Jurisdiction Over R-Pharm ................................14

    II.     Defendants Should Be Awarded Attorneys' Fees and Costs Incurred
            in Connection with Their Motions to Dismiss and This Motion ..........................17

CONCLUSION....................................................................................................................19

# TABLE OF AUTHORITIES

PAGE

## CASES

*In re Aluminum Warehousing Antitrust Litig.*,
    90 F. Supp. 3d 219 (S.D.N.Y. 2015) ....................................................................16

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    579 F.3d 143 (2d Cir. 2009) ..................................................................................6

*In re Auction Houses*, No. 00 Civ. 0648 (LAK) (RLE),
    2004 WL 2624896 (S.D.N.Y. Nov. 18, 2004) ......................................................7

*In re Austl. & N.Z. Banking Grp. Ltd. Secs. Litig.*,
    712 F. Supp. 2d 255 (S.D.N.Y. 2010) ..................................................................18

*Binghamton Masonic Temple, Inc. v. Bares*,
    189 F.3d 460, 1999 WL 568032 (2d Cir. 1999) ..............................................11, 12

*Bletas v. Deluca*,
    No. 11 Civ. 1777 (NRB), 2011 WL 13130879 (S.D.N.Y. Nov. 15, 2011) .............7

*Brown v. Lockheed Martin Corp.*,
    814 F.3d 619 (2d Cir. 2016) ................................................................................16

*Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch v. Valcorp, Inc.*,
    28 F.3d 259 (2d Cir. 1994) ....................................................................................6

*Daimler AG v. Bauman*,
    134 S. Ct. 746 (2014) ...............................................................................3, 15, 16

*Eastway Constr. Corp. v. City of New York*,
    762 F.2d 243 (2d Cir. 1985) ............................................................................ 9-10

*Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*,
    875 F.2d 388 (2d Cir. 1989) ..................................................................................7

*Kitrosser v. CIT Grp./Factoring, Inc.*,
    133 F.3d 907, 1998 WL 4074 (2d Cir. 1998) ........................................................7

*Lotes Co. v. Hon Hai Precision Indus. Co.*,
    753 F.3d 395 (2d Cir. 2014) ................................................................................11

*Neroni v. Becker*,
    609 F. App'x 690 (2d Cir. 2015) .....................................................................13-14

*In re New Motor Vehicles Canadian Export Antitrust Litig.*,
    307 F. Supp. 2d 145 (D. Me. 2004) ...................................................................17

*Pentagen Techs. Intern. Ltd. v. United States*,
    172 F. Supp. 2d 464 (S.D.N.Y. 2001),
    *aff'd*, 63 F. App'x 548 (2d Cir. 2003) ..........................................................12, 18

*Piccone v. Bd. of Dirs. of Doctors Hosp. of Staten Island, Inc.*,
    No. 97 Civ. 8182 (MBM), 2000 WL 1219391 (S.D.N.Y. Aug. 28, 2000)......................10, 12

*S. Pac. Shipping Co. v. Redi-Fresh Produce Inc.*,
    No. 14 Civ. 4157 (LAK) (AJP), 2014 WL 6968039 (S.D.N.Y. Dec. 9, 2014) .............7, 11, 14

*Schottenstein v. Schottenstein*,
    230 F.R.D. 355 (S.D.N.Y. 2005) ................................................................11, 12

*Tarsavage v. Citic Trust Co.*,
    3 F. Supp. 3d 137 (S.D.N.Y. 2014).................................................................16

*Tymoshenko v. Firtash*,
    No. 11 Civ. 2794, 2013 WL 1234943 (S.D.N.Y. Mar. 27, 2013) ...........................17

### STATUTES & RULES

15 U.S.C. § 6a......................................................................................10

15 U.S.C. § 13......................................................................................12

15 U.S.C. § 14......................................................................................12

15 U.S.C. § 15......................................................................................11

15 U.S.C. § 26......................................................................................11

28 U.S.C. § 1927...............................................................................1, 7, 8

Federal Rule of Civil Procedure 11 ..................................................... *passim*

Defendants Roche Holding AG ("Roche Holding"), F. Hoffmann-La Roche Ltd ("FHLR"), Genentech, Inc. ("Genentech"), and R-Pharm JSC ("R-Pharm") (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to sanction BIOCAD JSC ("BIOCAD") and BIOCAD's counsel, Feinstein & Partners, PLLC ("Plaintiff's Counsel"), under Rule 11 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1927.

## PRELIMINARY STATEMENT

The defendants in this lawsuit have frequently been the targets of litigation. But they have rarely, if ever, sought sanctions under Rule 11 of the Federal Rules of Civil Procedure against a plaintiff or counsel in those actions. Here, however, BIOCAD has gone beyond the bounds of reasonableness in pursuing this utterly frivolous action: Its claims are not only self-evidently contrary to the statutes they purport to enforce and to the unequivocal holdings of controlling precedents, but indeed are unambiguously disconnected from U.S. commerce and have no justification for being before a U.S. court. It is impossible to see this conduct as anything other than an abuse of U.S. legal process to attempt to extract a settlement from Defendants, procure Defendants' confidential and proprietary information through discovery, or force the increase of pharmaceutical prices in Russia. None is acceptable.

The Complaint in this action contains pages upon pages of allegations pertaining solely to the low prices at which pharmaceuticals are sold to Russian consumers, the packaging of pharmaceuticals for the Russian market, and contracts for pharmaceutical sales to the Russian government. As this Court recognized after reviewing the Complaint, BIOCAD "want[s] U.S. antitrust law to stop [Defendants] from doing what they're doing in Russia," which is at best a "really fanciful application" of U.S. law and certainly "is not a viable cause of action." But the claims here go beyond a mere misapplication of the law. They are so far from meeting even the most basic requirements to state a U.S. antitrust claim, so wildly deficient in justifying their

consideration by this United States Court, that they can be seen only as an attempt to use the U.S. antitrust laws to punish Defendants for the competition BIOCAD faces in Russia.

The failings in BIOCAD's claims are egregious on multiple levels.  For instance:

- In order to have standing to bring its antitrust claims, BIOCAD must have suffered an actual, domestic injury as a result of the alleged anticompetitive conduct.  But, to this day, BIOCAD has been wholly unable to identify the manner in which it has allegedly suffered antitrust injury in the United States.  By necessity, the complaints do little more than assert supposed harm to BIOCAD's Russian business:  BIOCAD does not operate in the United States, and the drugs it claims to have developed generic versions of are under patent in the United States through at least 2018.  For that reason, BIOCAD's myriad allegations revolve around supposed conduct in Russia and the Russian pharmaceutical market—and even its allegations of injury in Russia are contradicted by other statements it has made publicly.

- Antitrust claims based on alleged conduct abroad must have a direct and substantial effect on U.S. commerce, and that effect must itself give rise to the claims.  As BIOCAD's failure to show an injury makes clear, the alleged conduct here had no such effect on U.S. commerce.  Even had there been some domestic effect, however, BIOCAD's claims are categorically grounded in allegations about events in Russia; BIOCAD has not even attempted to argue that its claims are based on a detriment to U.S. commerce.  Such claims are simply incompatible with the plain language of the statutes under which BIOCAD has brought its complaints.

- BIOCAD is also asking this Court to assert personal jurisdiction over R-Pharm, a Russian corporation, even though R-Pharm has done no business at all in the United

States.  BIOCAD frivolously suggests that R-Pharm should be subject to *general jurisdiction* in the United States, allowing BIOCAD to challenge R-Pharm's pricing and packaging of drugs in Russia for Russian customers, based on the mere fact that R-Pharm owns a small subsidiary in the United States—a position that is unambiguously contrary to the Supreme Court's decision in *Daimler*.

BIOCAD was given a preview of the insurmountable failings of its Complaint by Defendants' pre-motion letters and the ensuing conference.  The Court even warned BIOCAD that these deficiencies did not appear able to be cured by amendment and that its theories were so off base as to lend themselves to a Rule 11 motion.  But BIOCAD neither withdrew the action nor amended its claims in any way even approaching a fix.  Instead, the Amended Complaint doubled down on the original Complaint's shortcomings, making the same allegations as before, adding nearly 50 paragraphs about supposed bribery of Russian medical practitioners, and declining to articulate how that conduct has caused any domestic injury to BIOCAD.  BIOCAD's opposition to Defendants' motions to dismiss (ECF No. 63) (the "Opposition") went even further, needlessly attaching apocryphal documents—some only in excerpted form—in support of allegations that have nothing to do with U.S. antitrust law or any supposed injury to BIOCAD in the United States.

BIOCAD's reaction to being informed that its Complaint was potentially sanctionable— namely, adding inflammatory allegations and unsubstantiated exhibits that may be injurious to Defendants' reputations but that do not remedy any of the issues with its claims—makes clear that its true purpose in prosecuting this action is extortive, not to promote U.S. competition.  It is abusing the U.S. legal system at the expense of Defendants' and this Court's resources by bringing false and meritless claims that, in any event, simply do not belong in this forum.  Defendants

respectfully request that this Court award sanctions and allow Defendants to recover at least some portion of the legal fees that they have been forced to incur in defending this frivolous action.

## RELEVANT BACKGROUND[1]

On June 7, 2016, Plaintiff's Counsel filed the Complaint (ECF No. 1) in this action, alleging that Defendants FHLR, Genentech, and R-Pharm violated U.S. antitrust laws by committing wrongful acts in Russia.  The central thrust of the Complaint was that, through their actions in Russia, the named Defendants had—in some unspecified way—precluded BIOCAD from expanding its business to the United States.  The Complaint expressly acknowledged that BIOCAD does not currently have any business dealings in the United States, and that BIOCAD's purported plans to market drugs domestically cannot even begin until after it has applied for and received FDA approval, and after the expiration of Genentech's U.S. patents in 2018 and 2019.  (Compl. ¶¶ 4, 10, 16, 97, 99.)  Defendants subsequently filed letters regarding proposed motions to dismiss the Complaint on multiple grounds (ECF Nos. 20, 22, 23), including the obvious failures to allege an antitrust injury or comply with the requirements of the Foreign Trade Antitrust Improvements Act (the "FTAIA") that alleged foreign conduct proximately cause a domestic effect that in turn gives rises to a plaintiff's antitrust claims.  R-Pharm advanced separate arguments for dismissal based on BIOCAD's failure to effect service and lack of personal jurisdiction.

The Court held a pre-motion conference to discuss Defendants' anticipated motions on September 23, 2016.  During the conference, the Court observed that the Complaint "is an extremely aggressive theory of antitrust liability that I don't see any precedent for and I think, frankly, the precedent really is going the other way here."  (Hr'g Tr. (Sept. 23, 2016) (ECF

---

[1] The facts relevant to this motion are summarized herein.  More detailed summaries of the allegations are set forth in Defendants' memoranda of law in support of their motions to dismiss the Amended Complaint (ECF Nos. 52, 55, 57).

No. 33) at 13:2-5.)  Acknowledging that it had no supporting precedent for its claims, Plaintiff's

Counsel insisted that Defendants' alleged conduct "to destroy [BIOCAD] from entering the U.S.

market" was actionable.  (*Id.* at 13:9-25.)  In the face of repeated questioning from the Court,

however, Plaintiff's Counsel was never able to articulate what domestic injury BIOCAD was

alleging it had suffered.  (*Id.* at 14:8-15:6, 16:17-17:5, 18:2-19:10, 24:12-26:11, 26:24-30:10,

31:2-12.)  Likewise, Plaintiff's Counsel never explained how the claims satisfied the FTAIA's

requirements, leading the Court to opine that it was "the reverse ripple effect [alleged in the

Complaint] that is what makes this such a problematic theory."  (*Id.* at 37:7-10.)

Reflecting on those and other failings, the Court noted that it did not "think [BIOCAD's]

complaint states a cause of action" and that it was "not clear to [the Court] what the amendments

[to BIOCAD's Complaint] are going to look like that would even make a difference here."  (*Id.* at

15:4-5, 31:16-18.)  In concluding the conference, the Court stated plainly that BIOCAD "want[s]

U.S. antitrust law to stop [Defendants] from doing what they're doing in Russia," which "is not a

viable cause of action, at least as currently pled, and it doesn't sound to me like what [BIOCAD is]

going to add [in amending the Complaint] is going to fix this."  (*Id.* at 37:7-10, 38:18-22.)  In light

of the multitude of issues with BIOCAD's theories and Plaintiff's Counsel's inability to identify

amendments that might salvage them, the Court observed that the lawsuit was "a really fanciful

application" and "[not] a proper use of the U.S. antitrust laws."  (*Id.* at 38:18-39:10.)  Accordingly,

"there's arguably a Rule 11 motion to be made here."  (*Id.*)  Nevertheless, the Court granted

BIOCAD 30 days to amend the Complaint, if it chose to continue the litigation.

BIOCAD did choose to further pursue its meritless claims, and on October 24, 2016, it

filed the Amended Complaint (ECF No. 37).  The Amended Complaint added Roche Holding as a

defendant and *11 pages* of allegations claiming kickbacks to Russian medical professionals with

zero connection to the United States, but it advanced the exact same theories as had underpinned the original Complaint.  Nowhere did the Amended Complaint identify a domestic injury to BIOCAD, and it continued to rely on the "reverse ripple effect" to attempt to manufacture a nexus with the United States.  In addition, BIOCAD never remedied its failure to serve R-Pharm.

On December 12, 2016, Defendants filed their motions to dismiss the Amended Complaint, making the same arguments the Court had already warned BIOCAD were fatal to its claims.  On January 31, 2017, BIOCAD filed a fifty-page opposition to Defendants' motions to dismiss along with numerous exhibits (ECF Nos. 62, 63).  The majority of the exhibits purport to be internal Roche documents, the authenticity of which BIOCAD has provided no basis for, and two of them are only partial excerpts of email chains, rather than true and complete documents (ECF No. 62, Exs. I, J).  Regardless, the Opposition does not, because it cannot, justify the persistent failings in BIOCAD's theories.

## LEGAL STANDARDS

Rule 11 of the Federal Rules of Civil Procedure requires an attorney filing a pleading to "certif[y] that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the claims are "not being presented for any improper purpose, such as to harass," and "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law."  Fed. R. Civ. P. 11(b)(1), (2).  Sanctions under Rule 11 "require[] only a showing of objective unreasonableness on the part of the attorney or client signing the papers."  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 579 F.3d 143, 150 (2d Cir. 2009); *see also Caisse Nationale de Credit Agricole-CNCA, N.Y. Branch v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1994) ("An argument constitutes a frivolous legal position for purposes of Rule 11 sanctions if, under an objective

standard of reasonableness, it is clear that there is no chance of success." (internal quotation marks omitted)).  An improper purpose motivating the filing of a claim may be inferred from an utter lack of merit in that claim.  *See S. Pac. Shipping Co. v. Redi-Fresh Produce Inc.*, No. 14 Civ. 4157 (LAK) (AJP), 2014 WL 6968039, at \*10 (S.D.N.Y. Dec. 9, 2014) (citing cases).

Similarly, 28 U.S.C. § 1927 provides that an attorney may be sanctioned for "multipl[ying] the proceedings in any case unreasonably and vexatiously."  The bad faith underlying this standard may be inferred where "the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose."  *Kitrosser v. CIT Grp./Factoring, Inc.*, 133 F.3d 907, 1998 WL 4074, at \*1 (2d Cir. 1998) (affirming sanctions).  Like Rule 11 sanctions, sanctions under Section 1927 may be warranted where "the attorney engaged in 'objectively unreasonable' conduct."  *In re Auction Houses*, No. 00 Civ. 0648 (LAK) (RLE), 2004 WL 2624896, at \*4 (S.D.N.Y. Nov. 18, 2004).

Rule 11 "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed."  *Int'l Shipping Co., S.A. v. Hydra Offshore, Inc.*, 875 F.2d 388, 390 (2d Cir. 1989).  Sanctions are appropriate where a party "fail[s] to undertake a reasonable inquiry into the law that governs and clearly precludes the claims . . . for which no cause of action exists."  *Bletas v. Deluca*, No. 11 Civ. 1777 (NRB), 2011 WL 13130879, at \*11 (S.D.N.Y. Nov. 15, 2011).

Once a court finds that Rule 11 has been violated, it "may impose an appropriate sanction," including payment of "part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."  Fed. R. Civ. P. 11(c).  Courts are empowered "with discretion to award that portion of a defendant's attorney's fee thought reasonable to serve the sanctioning purpose of the Rule," and the "scope of that discretion is broad."  *Int'l Shipping Co.*, 875 F.2d at

392.  Sanctions under Section 1927 may include "the excess costs, expenses, and attorneys' fees

reasonably incurred because of [the sanctioned attorney's] conduct."  28 U.S.C. § 1927.

## ARGUMENT

### I.     The Claims Advanced in the Complaint and the Amended Complaint Are in Violation of Rule 11

The central thesis of BIOCAD's claims—that U.S. antitrust law may be used to regulate

conduct in a foreign country that has foreign effects on a foreign company conducting no

business in the United States—has been thoroughly and clearly repudiated by both statute and

case law.  No reasonable inquiry into the validity of BIOCAD's claims would yield any other

finding, and the Court and Defendants each identified the failings of those claims to BIOCAD in

explicit terms.  The only conclusion is that BIOCAD and Plaintiff's Counsel willfully ignored

their obligations under Rule 11 when filing both the Complaint and the Amended Complaint,

which were intended to harass Defendants rather than vindicate any legitimate rights.

### A.     Plaintiff's Counsel Should Be Sanctioned for Bringing Claims Absent Injury

As explained in Defendants' briefs in support of their motions to dismiss, BIOCAD has

no standing to bring its claims because it has not alleged any injury, let alone an antitrust injury.

Despite being repeatedly questioned by this Court as to the nature of its injury (Hr'g Tr. at 14:11

("What's the injury?"), 16:17 ("The injury is what?"), 18:21 ("What is your injury today?"),

19:3-4 ("You have to establish a nonspeculative injury, right?"), 24:25-25:1 ("So what is the

injury in the United States that you're talking about here?")), BIOCAD's Amended Complaint

utterly fails to allege that it has been injured by any of the alleged conduct in Russia,[2] nor does it

specify how the foreign conduct at issue has resulted in domestic injury to BIOCAD.

---

[2] That failure is unsurprising, given public statements by BIOCAD about the success it has
experienced in Russia with its generic versions of the drugs at issue.  (*See, e.g.*, Decl. of Andrew S.
(….continued)

The closest BIOCAD has come to articulating a domestic injury has been its assertion that "Defendants' conduct has delayed, and may completely foreclose, Plaintiff's entry" into the U.S. market.  (Am. Compl. ¶ 236.)  Yet the Amended Complaint nowhere explains how Defendants have delayed BIOCAD's entry in any way[3]—particularly when BIOCAD does not operate in the United States, cannot sell its generics in the United States until at least 2018 and 2019, and has yet to even apply for approval from the FDA to do so.  Indeed, contrary to the Amended Complaint's conclusory assertion that "Plaintiff anticipated FDA approval, and such FDA approval is probable" (*id.* ¶ 22), BIOCAD's own self-serving press kit does not even mention the United States as a country where clinical trials are being performed or registration is anticipated.  (Gehring Decl., Ex. C (Press Kit, BIOCAD (Apr. 2016)) at 42-43 (identifying, for example, expected registrations for BIOCAD's generic version of rituximab through 2020 in 13 geographic regions, none of which is the United States).)

BIOCAD has plainly suffered no injury that could confer antitrust standing upon it. Warned multiple times that its claims could not proceed absent injury, BIOCAD nevertheless insisted on attempting to continue the litigation by obfuscating facts in the Amended Complaint, even making allegations contrary to fact.  But the reality is clear:  BIOCAD has no injury, and its claims have no merit.  Sanctions are warranted in these circumstances.  *See Eastway Constr.*

---

(continued….)

Gehring ("Gehring Decl."), Ex. A (Guy Martin, "Biocad Goals Go Beyond Putting Russian Biotech on the Map," *The Pharma Letter* (Nov. 29, 2016)) (BIOCAD vice president stating that "all three monoclonal antibody biosimilars that we have launched so far in Russia were a great success for our company"); *id.*, Ex. B (Press Release, BIOCAD, "BIOCAD - World Leader in Biosimilar Rituximab Sales" (Oct. 22, 2015)) (describing a generic's successful sales in Russia).)

[3] The Court encountered the same issue when pressing Plaintiff's Counsel at the pre-motion conference to explain its theory of BIOCAD's injury.  (*E.g.*, Hr'g Tr. at 28:18-30:18 ("So again, the question is, what are they doing that would prevent you from getting the approvals you need to be a competitor in the United States?").)

*Corp. v. City of New York*, 762 F.2d 243, 254 (2d Cir. 1985) (sanctions appropriate where plaintiff's antitrust claim, "without any allegation of an antitrust injury, was destined to fail" and "a competent attorney, after reasonable inquiry, would have had to reach the same conclusion") (superseded by statute on other grounds); *Piccone v. Bd. of Dirs. of Doctors Hosp. of Staten Island, Inc.*, No. 97 Civ. 8182 (MBM), 2000 WL 1219391, at *4-5, 9 (S.D.N.Y. Aug. 28, 2000) (imposing sanctions where plaintiff failed to plead an antitrust injury).

### B.    Plaintiff's Counsel Should Be Sanctioned for Bringing Claims Contrary to Statute

Equally fatal to all of BIOCAD's claims—and apparent from even cursory research into U.S. antitrust law—is the plain language of the statutes on which they are based.  As was made clear in Defendants' pre-motion letters and motions to dismiss, BIOCAD's claims have no chance of success because they fail the basic requirements imposed by those statutes, which have been thoroughly explicated by numerous courts, including in highly analogous circumstances.

First, with respect to BIOCAD's Sherman Act claims, the FTAIA is clear that such claims are valid only if (1) the alleged conduct "has a direct, substantial, and reasonably foreseeable effect" on U.S. commerce, and (2) that effect "gives rise" to the claim.  15 U.S.C. § 6a.[4]  As discussed above, the only domestic effect alleged by BIOCAD—its supposed exclusion from the U.S. market—is neither explained in the Amended Complaint nor supported by fact.  Moreover, BIOCAD's theory is precisely that its injury in Russia has had some effect on the United States, the reverse of what the FTAIA requires.  That exact same theory was raised by the plaintiff, and

---

[4] BIOCAD's opposition to the motions to dismiss attempts to shoehorn BIOCAD's claims into an exception to the FTAIA for conduct involving import commerce.  (Pl. Opp'n Br. at 19.)  As addressed more fully in Defendants' reply briefs, however, the conduct BIOCAD has alleged *does not involve import commerce*, instead pertaining entirely to its sale of drugs in Russia. There is no support for BIOCAD's assertion that the conduct alleged falls within the exception because, somewhere downstream, BIOCAD may import drugs into the United States at some point in the future.  The remainder of Defendants' FTAIA arguments go essentially unaddressed.

resoundingly rejected by the Second Circuit, in *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395, 414 (2d Cir. 2014) (rejecting antitrust claims under the FTAIA because the "direction of causation runs the wrong way"), years before BIOCAD filed the Complaint.  A plain reading of the relevant statute and primary controlling authority makes clear that BIOCAD's theory of liability simply is not valid under U.S. antitrust law, as this Court recognized when it told Plaintiff's Counsel that BIOCAD's claims were contrary to precedent.  (Hr'g Tr. 13:2-5.)  Plaintiff's Counsel's failure to identify these flaws is objectively unreasonable and therefore sanctionable. *See, e.g.*, *Binghamton Masonic Temple, Inc. v. Bares*, 189 F.3d 460, 1999 WL 568032, at *1-2 (2d Cir. 1999) (affirming imposition of sanctions for pursuit of a claim without reasonable basis in the law); *Schottenstein v. Schottenstein*, 230 F.R.D. 355, 360-61 (S.D.N.Y. 2005) (imposing sanctions where "a reasonable inquiry would have revealed [that a claim] had no chance of success").

Second, BIOCAD's Clayton Act claims have no statutory basis.  As pleaded, the Fifth and Sixth Claims for Relief in the Amended Complaint purport to state claims under 15 U.S.C. §§ 15 and 26, but those sections do not prohibit any conduct and cannot be the basis of a violation.  Rather, they simply describe entitlement to damages and injunctive relief, respectively.  *See* 15 U.S.C. §§ 15(a) ("[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor . . . and shall recover threefold the damages by him sustained . . . ."), 26 ("Any person . . . shall be entitled to sue for and have injunctive relief . . . against threatened loss or damage by a violation of the antitrust laws . . . .").  These claims are not "the appropriate mechanism for recovering" for any of the alleged conduct and are therefore "objectively unreasonable" with "no chance of success." *S. Pac. Shipping*, 2014 WL 6968039, at *9-11 (imposing sanctions).

Third, even had the Clayton Act claims been asserted under the appropriate sections, neither they nor the Robinson-Patman Act claims would be actionable for an entirely independent reason:  The jurisdictional reach of both acts extends only to conduct involving products sold for "use, consumption, or resale within the United States." 15 U.S.C §§ 13(a) (Robinson-Patman Act), 14 (Clayton Act).  The Amended Complaint contains no allegations that Defendants engaged in price discrimination among U.S. consumers or tied products sold for use in the United States.[5]  Had Plaintiff's Counsel made a reasonable inquiry—or, indeed, any inquiry—into the scope of the Clayton and Robinson-Patman Acts, it would have been apparent that these claims were baseless as well.  Such claims are deserving of sanctions.  *See, e.g.*, *Binghamton Masonic Temple*, 1999 WL 568032, at *1-2; *Schottenstein*, 230 F.R.D. at 360-61.

Plaintiff's Counsel has no excuse for these failures, and the Amended Complaint fixed none of these issues that were present in the original Complaint.  Nor does BIOCAD's Opposition provide any justification for them or any basis on which existing law might be modified.  A complaint composed entirely of claims that run contrary to the very statutes on which they are purported to be based should not be tolerated by this, or any, Court.

---

[5] In fact, BIOCAD has recognized that its allegations of tying are not proper for adjudication by a U.S. court because—even prior to the filing of the original Complaint—it had already unsuccessfully litigated the registration of Beyodaim before a Russian tribunal, where such a dispute belongs.  (Gehring Decl., Ex. D (Decision, No. A40-14981 (Moscow Comm. Ct. Apr. 15, 2016).)  BIOCAD has now exhausted every appeal available to it in Russia, failing to achieve the result it desired.  It is thus apparent that this U.S. litigation is nothing more than a last-ditch attempt by BIOCAD to obtain that which it could not in Russia.  BIOCAD's repeated meritless litigation only further justifies the imposition of sanctions.  *See Piccone*, 2000 WL1219391, at *4-5, 9 (imposing sanctions where a plaintiff repeatedly pursued multiple meritless proceedings); *Pentagen Techs. Intern. Ltd. v. United States*, 172 F. Supp. 2d 464, 473-74 (S.D.N.Y. 2001), *aff'd*, 63 F. App'x 548 (2d Cir. 2003) (same).

### C.    BIOCAD and Plaintiff's Counsel Should Be Sanctioned for Prosecuting This Action with an Improper Motive

BIOCAD has been repeatedly cautioned that U.S. antitrust law does not permit a foreign plaintiff to assert claims before a U.S. court about foreign conduct causing foreign harm. (*E.g.*, Hr'g Tr. at 37:7-10, 38:18-22 (BIOCAD's use of "U.S. antitrust law to stop [Defendants] from doing what they're doing in Russia" "is not a viable cause of action").) Yet BIOCAD took the opportunity to file an Amended Complaint afforded to it by this Court *not* to pare down its allegations to those pertaining to the United States, or even to explain how its existing allegations actually affected U.S. commerce. Rather, it added dozens of additional paragraphs of inflammatory allegations of supposed bribery and kickbacks occurring in Russia that do not even once mention any conduct in the United States. (Am. Compl. ¶¶ 136-180.)

When Defendants made plain the irrelevance of those allegations in their motions to dismiss—because, among other reasons, that conduct is alleged to have occurred before BIOCAD even entered the Russian market for the relevant drugs, making it impossible to have injured BIOCAD in Russia, let alone in the United States—BIOCAD responded by filing numerous exhibits that it claims support its allegations. Not only is the provenance of those documents suspect and unable to be authenticated by Plaintiff's Counsel's declaration, the two annexed e-mail chains are included only in part, rather than as true and correct copies (ECF No. 62, Exs. I, J). More importantly, however, the exhibits can serve no legitimate purpose in the context of a motion to dismiss, where no Defendant moved on the basis that BIOCAD's allegations are false.

Combined with the frivolous nature of its claims, the allegations of harm that are flatly contradicted by its other public statements, and its prior failed legal action (in Russia) seeking certain of the same relief it seeks here, the only inference to be drawn from this behavior is that BIOCAD is pursuing this action in bad faith. *See, e.g.*, *Neroni v. Becker*, 609 F. App'x 690, 693

(2d Cir. 2015) (affirming imposition of sanctions where the arguments advanced "lacked factual support and were baseless and vexatious" and submissions were "rife with conjecture, irrelevant personal accusations, and a blatant disregard for well-settled legal principles"); *S. Pac. Shipping*, 2014 WL 6968039, at *10 (inferring improper purpose from claims' lack of merit).  BIOCAD has attempted to coopt the U.S. justice system to serve its own ends—raising the prices at which it can sell its pharmaceuticals in Russia.  Having ignored repeated warnings that it cannot use American courts in this fashion, it should now face the consequences for doing so.

> **D.      Plaintiffs' Counsel Should Be Sanctioned for Knowingly**
> **Advancing Specious Arguments for Personal Jurisdiction Over R-Pharm**

In pre-motion filings, R-Pharm repeatedly challenged BIOCAD's baseless claim of personal jurisdiction over R-Pharm, a Russian company with no operations or sales within the United States.  (ECF No. 23 at 2; ECF No. 31 at 3.)  At the pre-motion conference, Plaintiff's Counsel persisted in claiming that personal jurisdiction was appropriate.  First, Counsel argued that the acts of R-Pharm's U.S. subsidiary sufficed to create personal jurisdiction over R-Pharm. (Hr'g Tr. 11:18-19.)  The Court noted, in response, that "you seem to be ignoring the corporate form and seem to think that you can do that, when the case law doesn't make it that simple." (*Id.* at 11:21-23.)  Plaintiff's Counsel also claimed that personal jurisdiction was present because R-Pharm's conduct was allegedly "designed to have effect in the U.S."  (*Id.* at 12:3-6.)  The Court noted that "I think personal jurisdiction, you know, there is a standard that has to be complied with, and I don't think saying that they intended to violate a U.S. law automatically gives U.S. courts the power to haul people into the Southern District of New York." (*Id.* at 12:9-14.)  Plaintiff's Counsel subsequently assured the Court that it would "add the facts to establish jurisdiction" in its Amended Complaint.  (*Id.* at 33:11-12.)

The Amended Complaint, however, comes nowhere close to adequately pleading a basis for personal jurisdiction over R-Pharm.  Instead, Plaintiff's Counsel simply doubled down on the arguments that gave the Court serious pause at the pre-motion conference.  And notwithstanding Counsel's assurance, the Amended Complaint does not plead any ***facts*** to support personal jurisdiction over R-Pharm.  Its personal jurisdiction allegations are entirely conclusory and fail to even differentiate among R-Pharm and the other Defendants.  (Am. Compl. ¶ 20.)  At best, the allegations can be read as simply a repeat of the meritless arguments that Plaintiff's Counsel advanced at the pre-motion conference.

The Opposition confirms this reading.  First, despite the Court's admonition (Hr'g Tr. 11:21-23), Plaintiff's Counsel continues to ignore the separate corporate identities of R-Pharm and its wholly owned U.S. subsidiary,[6] and even went so far as to suggest that R-Pharm could be subject to *general jurisdiction* in the U.S.  (Opp'n at 25-27.)  Second, the Opposition does nothing to remedy Plaintiff's Counsel's failure to provide any *factual* support in the Amended Complaint for its assertion that R-Pharm failed to observe corporate formalities, or that R-Pharm's purported acts in Russia were purposely directed at the U.S. and specifically intended to have an effect here.

The law of personal jurisdiction is clear.  General personal jurisdiction cannot exist over a corporate defendant unless that defendant can be considered essentially *at home* within the forum.  *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014).  R-Pharm is a Russian company that is headquartered in Russia.  It has no U.S. operations or sales.  Accordingly, Plaintiff's Counsel's claim of general jurisdiction is frivolous.  *See* Am. Compl. ¶ 26 (conceding that R-Pharm is a

---

[6] The Opposition argues that personal jurisdiction is proper because R-Pharm's U.S. subsidiary is a "mere department" R-Pharm.  (Opp'n at 27-29.)  But the Amended Complaint has *zero* allegations or factual basis regarding the corporate relationship between R-Pharm and its subsidiary.  This pleading failure alone is sufficient grounds to reject Plaintiff's "mere department" claim.

Russian company that is headquartered in Moscow, Russia); *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 627 (2d Cir. 2016) (observing that only a "truly 'exceptional' case" justifies a finding of general personal jurisdiction over a corporate defendant in a forum where it neither incorporated nor principally housed).

As this Court warned Plaintiff's Counsel, it cannot simply assume away R-Pharm's separate corporate form to overcome the Amended Complaint's utter failure to plead general personal jurisdiction. Counsel's failure to plead any facts in the Amended Complaint regarding R-Pharm's corporate separateness forecloses this argument as well. Moreover, even if R-Pharm's subsidiary's acts could be imputed to R-Pharm (which they cannot), *Daimler* makes clear that that would still not be enough. *See Daimler*, 134 S. Ct. at 760 ("Even if we were to assume that [the subsidiary] is at home in California, and further to assume [the subsidiary's] contacts are imputable to Daimler, there would still be no basis to subject Daimler to general jurisdiction in California, for Daimler's slim contacts with the State hardly render it at home there." (footnote omitted)).

Specific jurisdiction is equally untenable. BIOCAD's claims against R-Pharm do not arise from, or relate to, any alleged contacts by R-Pharm in this forum, only alleged conduct in Russia. (*E.g.,* Am. Compl. ¶¶ 133, 196, 200, 211.) The Opposition argues that R-Pharm's acts in Russia create specific jurisdiction because R-Pharm "actively participated" in a supposed conspiracy to restrain U.S. competition. (Opp'n at 30.) But the Amended Complaint does not offer anything other than conclusory allegations, and thus does not plausibly allege that R-Pharm "expressly aimed" to cause an effect in the U.S. through conduct in Russia. *Tarsavage v. Citic Trust Co.*, 3 F. Supp. 3d 137, 145 (S.D.N.Y. 2014) (internal quotation marks omitted); *see also In re Aluminum Warehousing Antitrust Litig.*, 90 F. Supp. 3d 219, 227 (S.D.N.Y. 2015) (Forrest, J.) (refusing to "find that the assertion of participation in a conspiracy generally can provide a

standalone basis for jurisdiction subject only to the constraints of due process" because "[t]his could potentially extend jurisdiction beyond that which Congress intended"); *Tymoshenko v. Firtash*, No. 11 Civ. 2794, 2013 WL 1234943, at *4-5 (S.D.N.Y. Mar. 27, 2013) (rejecting conspiracy jurisdiction under Rule 4(k)(2)); *In re New Motor Vehicles Canadian Export Antitrust Litig.*, 307 F. Supp. 2d 145, 158 (D. Me. 2004) ("I do not believe that the First Circuit would recognize a conspiracy theory of personal jurisdiction, whereby jurisdiction can be obtained over nonresident defendants based upon the jurisdictional contacts of coconspirators.").

The *only* plausible inference that could be drawn from the Amended Complaint is that R-Pharm's alleged conduct in Russia was intended to further its business in Russia, not the United States. And, finally, any assertion of personal jurisdiction over R-Pharm based on alleged conduct in Russia would be unreasonable and would not comport with constitutional notions of due process.

The Amended Complaint's and Opposition's claims regarding personal jurisdiction are fatally flawed by defects previously identified by R-Pharm and the Court. Plaintiff's Counsel's refusal to heed the Court's warnings about these defects evidences a willful disregard of the Court's and Defendants' time and resources. Sanctions for such conduct are warranted.

## II.     Defendants Should Be Awarded Attorneys' Fees and Costs Incurred in Connection with Their Motions to Dismiss and This Motion

Apprised of the numerous fatal deficiencies and improprieties in BIOCAD's claims, BIOCAD and Plaintiff's Counsel refused to course correct despite multiple opportunities to do so. Every shortcoming was laid bare in Defendants' pre-motion letters. The Court painstakingly walked through the problems facing BIOCAD at the pre-motion conference. And Plaintiff's Counsel professed to understand those issues and to be able to appropriately amend the Complaint. (Hr'g Tr. at 32:19-34:3.) But the Amended Complaint only exacerbated the

17

deficiencies of the original Complaint, forcing Defendants to litigate claims BIOCAD was expressly informed were without legal basis and requiring the Court to expend its own resources adjudicating a case that never should have been brought in the United States.

In these circumstances, BIOCAD and Plaintiff's Counsel should be ordered to pay at least some portion of the very significant fees and costs Defendants have incurred in securing dismissal of the action and in making the instant motion. *See, e.g.*, *Pentagen*, 172 F. Supp. 2d at 473-74 (S.D.N.Y. 2001), *aff'd*, 63 F. App'x 548 (2d Cir. 2003) (ordering plaintiff's counsel "to personally compensate [] defendants for their attorneys' fees and costs incurred defending the instant matter" where the complaints had "absolutely no chance of success under existing precedents"). The Court admonished Plaintiff's Counsel at the pre-motion conference that its theories may run afoul of Rule 11, and Defendants were clear that they intended to pursue their Rule 11 remedies. But BIOCAD, through its counsel, ignored those warnings and insisted on pursuing its utterly meritless claims for what can only have been improper reasons. Had Plaintiff's Counsel undertaken the requisite reasonable inquiry into the law governing BIOCAD's claims, or had BIOCAD heeded any of the alarms raised along the way, none of these motions would have been necessary. Consequently, the appropriate relief is a sanction requiring BIOCAD and Plaintiff's Counsel to pay for the costs of the motions that their frivolous and spurious claims made necessary.[7]

---

[7] Defendants could seek recovery of all fees expended in connection with this action, including from the original Complaint. *See, e.g.*, *In re Austl. & N.Z. Banking Grp. Ltd. Secs. Litig.*, 712 F. Supp. 2d 255, 266-67 (S.D.N.Y. 2010) (imposing sanctions in connection with original complaint even though amended complaint was deemed non-frivolous). But Defendants believe that BIOCAD's and Plaintiff's Counsel's truly egregious behavior was persisting with the claims following the pre-motion conference and that the limited fees they are seeking would be sufficient to deter future such conduct.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court enter an order assessing against BIOCAD and Plaintiff's Counsel the attorneys' fees and costs incurred in connection with Defendants' motions to dismiss and motion for sanctions, and awarding such other sanctions as the Court deems necessary and appropriate.

Dated:   New York, New York                      RESPECTFULLY SUBMITTED,
         February 14, 2017

DAVIS POLK & WARDWELL LLP                 LATHAM & WATKINS LLP

By:  _s/ Paul Spagnoletti_____     By:  _s/ Lawrence E. Buterman_____
     Paul Spagnoletti                           Daniel M. Wall (admitted *pro hac vice*)
     Andrew S. Gehring                          505 Montgomery Street, Ste. 2000
     450 Lexington Avenue                       San Francisco, California  94111
     New York, New York  10017                  Tel.: (415) 395-8240
     Tel.: (212) 450-4000                       Fax: (415) 395-8095
     Fax: (212) 450-4800                        dan.wall@lw.com
     paul.spagnoletti@davispolk.com
     andrew.gehring@davispolk.com               Lawrence E. Buterman
                                                885 Third Avenue
*Counsel for Defendants Roche Holding AG*       New York, New York  10022
*    and F. Hoffmann-La Roche Ltd*              Tel.: (212) 906-1200
                                                Fax: (212) 751-4864
                                                lawrence.buterman@lw.com

GIBSON, DUNN & CRUTCHER                          Amanda P. Reeves (admitted *pro hac vice*)
                                                555 Eleventh Street, NW, Suite 1000
By:  _s/ Eric J. Stock_____       Washington, DC  20004
     Eric J. Stock                              Tel.: (202) 637-2183
     Alejandro A. Herrera                       Fax: (202) 637-2201
     200 Park Avenue                            amanda.reeves@lw.com
     New York, New York  10166-0193
     Tel.: (212) 351-4000                  *Counsel for Defendant Genentech, Inc.*
     Fax: (212) 351-4035
     estock@gibsondunn.com
     aherrera@gibsondunn.com

*Counsel for Defendant R-Pharm JSC*